UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TRIPLE CANOPY, INCORPORATED
and ALLIED WORLD NATIONAL
ASSURANCE COMPANY,

        Petitioners,

v.                                                  CASE NO. 3:16-cv-739-J-32JBT

STEVEN RITZHEIMER and
DIRECTOR, OFFICE OF
WORKERS' COMPENSATION
PROGRAMS, UNITED STATES
DEPARTMENT OF LABOR,

        Respondents.

_____/

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Petitioners' Petition for Review of the

February 23, 2016 Decision and Order of the Benefits Review Board ("BRB"), which

affirmed the March 17, 2015 Decision and Order of an Administrative Law Judge

("ALJ"), through which Respondent Steven Ritzheimer ("Claimant") was awarded

disability compensation and medical benefits under the Longshore and Harbor

---

[1] "Within 14 days after being served with a copy of [this Report and Recommendation], a party may serve and file specific written objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2). "A party may respond to another party's objections within 14 days after being served with a copy." *Id.* A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901 *et seq.*, as extended by

the  Defense Base Act ("DBA"), 42 U.S.C. § 1651, *et seq.*  (Doc. 2.)  This case was

referred to the undersigned for preparation of a Report and Recommendation

regarding an appropriate resolution.  (Doc. 8.)  For the reasons set forth herein, the

undersigned respectfully **RECOMMENDS** that the BRB's decision be **AFFIRMED**.[2]

## I.    Background

The underlying facts in this case are not in dispute.  Claimant was injured on

March 3, 2012 while working as a contractor for Triple Canopy, Inc. ("Employer") in

Be'er Sheva, Israel.  (Doc. 14 at 19–21.)  He slipped and fell after work while getting

out of the shower in an apartment provided by the Employer.  (*Id.*)  He broke four

ribs, dislocated two vertebrae, punctured a lung, and damaged a nerve on the right

side of his back.  (*Id.*)  He also developed depression.  (*Id.* at 22.)

The ALJ found that "Claimant's physical injuries arose out of the conditions of

his employment," that the "'zone of special danger' doctrine applies to the

circumstances of the Claimant's accident and subsequent disability," that "Claimant

is suffering mental health issues that are causally related to his employment

injuries," and that Claimant "is totally disabled and entitled to income disability

benefits [and] medical benefits" under the DBA.  (*Id.* at 43, 45, 48.)  The BRB

affirmed the ALJ's decision, holding that the ALJ's "findings are supported by

---

[2] Although Petitioners request oral argument (Doc. 19 at 6), the undersigned
recommends that it is not needed.

substantial evidence and his conclusions are consistent with the applicable legal

principles." (*Id.* at 10.)  Petitioners filed this appeal in the Eleventh Circuit, which

transferred the case to this Court.[3]  (Doc. 1.)

## II.   Issue on Appeal

Petitioners raise a single issue on appeal:

> [W]hether the ALJ and BRB incorrectly interpreted the "zone of special danger" doctrine by finding Claimant's injury, arising from a slip and fall after showering while off duty and within his apartment in Israel, as a compensable work-related injury.

(Doc. 19 at 7–8.)

## III.   Legal Principles

### A.   Standard of Review

As the Eleventh Circuit has stated:

> The standard we employ in reviewing the BRB's review of an ALJ's decision is [as follows]:
>
> Decisions of the ALJ are reviewable only as to whether they are in accordance with law and supported by substantial evidence in light of the entire record.
>
> This deferential standard of review binds both the BRB and this Court.  Because this Court applies the same standard of review to ALJ decisions as does the BRB, our review of BRB decisions is *de novo*.  Substantial evidence has been defined as more than a scintilla.  It means such relevant evidence as a reasonable mind might accept as

---

[3] "[J]udicial review of compensation orders arising under the DBA must be commenced in the district courts."  *ITT Base Servs. v. Hickson*, 155 F.3d 1272, 1275 (11th Cir. 1998).

adequate to support a conclusion.

As we [have] observed . . . , when the BRB upholds the ALJ's decision, this Court's limited review of the ALJ effectively cloaks the BRB's decision with the same deference to which the ALJ is entitled.  Thus, although the case comes to us from the BRB, we begin our analysis by reviewing the decision of the ALJ.

*U.S. Steel Mining Co., LLC v. Director, OWCP*, 386 F.3d 977, 983–84 (11th Cir.

2004) (citations and quotations omitted).

### B.    Zone of Special Danger Doctrine

Regarding the zone of special danger doctrine, the Supreme Court has stated:

The test of recovery [under the LHWCA] is not a causal relation between the nature of employment of the injured person and the accident.  Nor is it necessary that the employee be engaged at the time of the injury in activity of benefit to his employer.  All that is required is that the 'obligations or condition' of employment create the 'zone of special danger' out of which the injury arose.  A reasonable rescue attempt, like pursuit in aid of an officer making an arrest, may be 'one of the risks of the employment, an incident of the service, foreseeable, if not foreseen, and so covered by the statute.'

*O'Leary v. Brown-Pacific-Maxon, Inc.*, 340 U.S. 504, 506–07 (1951).  Regarding application of the doctrine, the Supreme Court "drew the line only at cases where an employee had become 'so thoroughly disconnected from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment.'  This standard is in accord with the humanitarian nature of the Act . . . ."  *O'Keeffe v. Smith, Hinchman & Grylls Assocs.,*

4

*Inc.*, 380 U.S. 359, 362 (1965) (citation omitted) (quoting *O'Leary*, 340 U.S. at 507).

There appears to be only one binding circuit court decision directly addressing this doctrine under the DBA, from the Fifth Circuit in 1964, which is discussed further below. *See O'Keeffe v. Pan Am. World Airways, Inc.*, 338 F.2d 319 (5th Cir. 1964).[4] The only other binding authority on point appears to be three Supreme Court opinions, which were recently summarized and analyzed by the First Circuit in an opinion authored by Associate Justice David Souter (Ret.) of the Supreme Court, sitting by designation. *See Battelle Mem'l Inst. v. DiCecca*, 792 F.3d 214 (1st Cir. 2015) (analyzing *O'Leary*, 340 U.S. at 504, *Smith, Hinchman & Grylls Assocs., Inc.*, 380 U.S. at 359, and *Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25 (1965)). The undersigned recommends that *DiCecca*, which is consistent with the trio of cited Supreme Court cases and the Fifth Circuit's binding decision in *Pan American World Airways*, is persuasive and instructive, particularly in light of the lack of recent binding authority on point.

As recognized in *DiCecca*, there is little appellate law on this doctrine, and a precise rule regarding its application cannot be ascertained. *See DiCecca*, 792 F.3d at 217, 220. However, by analyzing the three subject Supreme Court cases, the First Circuit recognized the following key concepts:

First, the zone-of-special-danger doctrine under the DBA

---

[4] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting all decisions of the former Fifth Circuit announced prior to October 1, 1981, as binding precedent in the Eleventh Circuit).

works an expansion of traditional employer liability to include coverage for injuries without any direct causal connection to an employee's particular job or to any immediate service for the employer.  They must simply fall within foreseeable risks occasioned by or associated with the employment abroad.  Although the requisite "special danger" covers risks peculiar to the foreign location or risks of greater magnitude than those encountered domestically, the zone also includes risks that might occur anywhere but in fact occur where the employee is injured.  "Special" is best understood as "particular" but not necessarily "enhanced."  There is a pale of cognizability, however, which stops short of astonishing risks "unreasonabl[y]" removed from employment.  Thus administrative determinations have denied benefits, for example, for damages from cosmetic skin peels, and asphyxiation from auto-erotic practices.

Second, the determination of foreseeable risk is necessarily specific to context and thus turns on the totality of circumstances.

Third, and relatedly, in this corner of the law, the agency is given deference in applying the apposite doctrine to the particular case at hand.  Accordingly, the agency's rational determination is treated as far as possible as a finding of fact, for which a reviewing court considers only whether the agency had a substantial basis in the record.

*Id.* at 220–21 (citations omitted).

The *DiCecca* court also noted that the Supreme Court stated in at least one case that it "may not have reached the same conclusion" as the agency, but nevertheless affirmed the award.  *Id.* at 219 (quoting *Smith, Hinchman & Grylls Assocs., Inc.*, 380 U.S. at 363).  Based on these principles, the *DiCecca* court affirmed the BRB's decision that the overseas claimant's death in an automobile

accident while riding in a taxi paid for by his employer on his way to shop for groceries was compensable under the zone of special danger doctrine.

As noted in the BRB's decision in the instant case, the doctrine has been applied broadly to award benefits where the claimant was injured or died overseas while off-duty and traveling for recreational purposes, attempting to rescue someone in peril, traveling to a grocery store, fighting in bar, having a midnight rendezvous in a vehicle, fishing, and boating.  (*See* Doc. 14 at 8 n.6 (collecting cases)).  This includes the binding opinion of *Pan American World Airways*, wherein the Fifth Circuit held that the death of an overseas employee killed on a scooter after work hours while returning from a social visit was compensable under the DBA based on the zone of special danger doctrine.  338 F.2d at 319.

Also noted in the BRB's decision are cases in which the doctrine was held not to be applicable, such as where the overseas claimant was injured or killed by suicide, autoerotic asphyxiation, or use of a chemical peel skin treatment for personal reasons unrelated to employment.  (*See id.* at 9 n.7 (collecting cases)).  In each of these cases, the BRB held that the doctrine did not apply.  In the cases that were appealed further, the circuit court merely affirmed the decisions of the BRB. (*See id.*)

### IV.    Analysis

For the reasons set forth below, the undersigned recommends that the BRB's decision be affirmed.  The ALJ's determination that the zone of special danger

7

doctrine renders Claimant's injuries compensable under the DBA is in accordance

with applicable law and supported by substantial evidence.

### A.    The ALJ's Decision

The key portion of the ALJ's decision reads as follows:

> In the present case, the Claimant injured himself at an apartment that the employer paid for and designated. The Claimant did not have a choice in selecting his living quarters. He was not working at the time of his accident, but the obligations and conditions of his employment required that he reside in the employer provided housing, that he be available to work, *i.e.* "on call 24/7", and that he maintain his personal appearance and hygiene. The Employer argues that since the Claimant testified he would shower daily regardless of any work responsibilities the accident is not connected to an employment obligation. The Claimant stated showering helped him sleep better; he was not aware of a written rule requiring a daily shower; and he thought of showering as incidental to being human. For those reasons, the Employer argues the Claimant's injury arose from an activity entirely personal in nature. As such, the injury is so "thoroughly disconnected from the service to the employer" that it is not encompassed by the zone of special danger doctrine.

> I find the Claimant's employment obligations *and* conditions made bathing a necessity, such that the danger of slipping while getting out of the shower was created by his employment requirements. That the Claimant may have showered regardless of, or unaware of, those obligations or conditions is immaterial to the applicability of the zone of special danger doctrine. An injury is compensable under the Act where it arises from "one of the risks, an incident of service" which was "foreseeable, if not foreseen." Slipping in the shower is a foreseeable risk of service. The Claimant testified that the day of his injury he had returned from a day of work. He showered every day after work because he was filthy from sweat,

dirt, and sand.  The equipment he wore, body armor and gear, weighed about 100 pounds.  (TR 65).  The location where he worked was extremely windy and hot, with flies and rapid sandstorms.  He would be sweaty and dirty with sand in his underwear.  (TR 71).  The cause, working in those conditions, leads to the predictable effect of showering.  Further, the Employer's contract "requires its employees to maintain a neat and professional appearance, paying particular attention to their grooming, personal hygiene, bearing, clothing, and equipment while conducting business on behalf of the Company and the U.S. Government."  (CX 8 at 4).  The Employer required the Claimant to maintain good hygiene; it was an obligation of employment.  The hot and dirty conditions at the employment site would make fulfilling that obligation impossible without showering.

. . .

Showering is an implicit job requirement.  Showering after a day of work in Employer provided housing is entirely foreseeable.  Slipping on a wet floor is also a "foreseeable if not foreseen" consequence of utilizing the employer provided housing.  Thus, the obligations or conditions of employment created the zone of special danger out of which Claimant's injuries arose.

. . .

The overseas conditions of Claimant's employment, the hot and sandy location, hygiene and appearance requirements, and employer provided housing, demonstrate that showering and slipping in the shower are reasonable and foreseeable.

(Doc. 14 at 43–44.)

The ALJ also correctly addressed and applied the standard set forth in

*O'Leary* in concluding that Claimant showering was not "so thoroughly disconnected

9

from the service of his employer that it would be entirely unreasonable to say that injuries suffered by him arose out of and in the course of his employment." (*Id.* at 44 (quoting *O'Leary*, 340 U.S. at 507).)  The ALJ also recognized numerous other decisions applying the doctrine, which held that an overseas claimant's off-duty injuries were compensable where they were the result of a boating accident, a late night rendezvous in a car, hitchhiking, a car accident, a bar fight, and an overdose on painkillers after getting a tattoo.  (Doc. 14 at 44.)  The undersigned recommends that the ALJ's determination that, "[b]y comparison, the Claimant's slip and fall in his shower is more directly linked to the conditions and obligations of his employment" is supported by substantial evidence.  (*Id.*)

### B.    Petitioners' Arguments

Petitioners argue primarily that the ALJ's determination that the doctrine applies is not supported by substantial evidence because the ALJ relied on "irrelevant" evidence regarding the weather and a grooming/hygiene requirement in Claimant's contract instead of "relevant" evidence regarding Claimant's subjective reasons for showering, i.e., that it was part of being a human, that it helped him sleep better, and that he showered every day, even if he did not work.  (*See* Doc. 19 at 14–16.)  In short, Petitioners argue that Claimant's showering was personal in nature and unrelated to his employment.  (*See id.*)

As noted in the BRB's decision, Petitioners are essentially requesting that the evidence be re-weighed, i.e., that some evidence be given more weight than the ALJ

gave it and some less.  (*See* Doc. 14 at 12 n.12.)  However, such re-weighing is inappropriate.  Rather, the Court's review is limited to  "whether [the decision] is in accordance with law and supported by substantial evidence in light of the entire record."  *See U.S. Steel Mining Co., LLC*, 386 F.3d at 983–84.  If so, the Court must affirm even if it may not have reached the same decision as the agency.  *See Smith, Hinchman & Grylls Assocs., Inc.*, 380 U.S. at 363.

In this case, there is substantial evidence to support the ALJ's decision.  The ALJ relied on evidence regarding Claimant's work conditions, i.e., wearing 100 pounds of gear when it was hot and windy, with rapid sandstorms and flies, causing him to be dirty, sweaty, and sandy after work.  (*See* Doc. 18 at 172, 176, 178.)  The ALJ also noted Claimant's obligation to maintain good hygiene and a professional appearance (*see id.* at 255–56, 260; Doc. 16 at 123) in finding that showering was an implicit job requirement.  (Doc. 14 at 43–44.)  Additionally, the ALJ relied on evidence that Claimant was on call 24/7 (Doc. 18 at 172–73) and that Claimant was required to live in the apartment chosen and paid for by his employer (*id.* at 167) in finding that it was reasonable and foreseeable that Claimant might slip and fall while showering in that apartment.  (Doc. 14 at 43–44.)  Thus, the undersigned recommends that substantial evidence supports the ALJ's findings that the obligations or conditions of employment created the zone of special danger out of which Claimant's injuries arose, and that Claimant showering after work was not "so thoroughly disconnected from the service of his employer that it would be entirely

11

unreasonable to say that injuries suffered by him arose out of and in the course of his employment." (*Id.*)

Petitioners raise, at least indirectly, several other arguments which the undersigned recommends should also be rejected. First, Petitioners argue that the doctrine should not apply because Claimant did not live in a dangerous area, and did not receive hazardous duty pay. (*See* Doc. 19 at 8–9.) However, this is not required for the doctrine to apply. *See DiCecca*, 792 F.3d at 221 (the claimant's receipt of hazardous duty pay was "relevant . . . though not crucial" to determining whether the doctrine applied). Morever, Claimant's contract stated in part that "performing the services will expose [him] to the unusual hazards and risks of a high-threat environment, including, but not limited to, the extreme and unpredictable threats and hazards of international conflict, war and/or other common and uncommon threats and hazards," and that "performing the services is inherently dangerous and may result in death or personal injury." (Doc. 16 at 125–26.) Thus, the undersigned recommends that this argument be rejected.

Petitioners also argue that the doctrine should not apply because the bathroom in the apartment where Claimant was injured was no different from Claimant's bathroom in the U.S. (*See* Doc. 19 at 9–10.) In support of this argument, Petitioners rely on *Ford Aerospace and Communications Corp. v. Boling*, 684 F.2d 640 (9th Cir. 1982), wherein the design of the foreign housing contributed to the subject injury. (Doc. 19 at 27.) However, as noted by the BRB, "the fact that the

foreign housing in *Ford Aerospace* presented a 'unique' or 'increased' danger to the employee in that case does not mandate the existence of such conditions as a prerequisite for application of the zone of special danger doctrine." (Doc. 14 at 13 n.13 (citing *DiCecca*, 792 F.3d at 220).)  Rather, under the doctrine, the "special danger" need not be unique to or enhanced by the foreign location.  *See DiCecca*, 792 F.3d at 220 ("[T]he zone [of special danger] also includes risks that might occur anywhere but in fact occur where the employee is injured.").  Thus, the undersigned recommends that this argument also be rejected.[5]

Petitioners argue further that because showering is necessary as a human being, it has no nexus to Claimant's employment.  (Doc. 19 at 24–25.)  However, necessary acts can be, and have been, covered under the doctrine based on case law which "explains why an otherwise personal activity, like recreation, should be deemed a necessity and thus incident to overseas employment."  *See DiCecca*, 792 F.3d at  222–23 ("[B]ecause grocery shopping is a necessity, it too should be considered an incident to the employment. . . . [I]t is very hard, perhaps impossible, to distill a rule that injuries arising out of a night on the town are covered but not those incurred shopping for food.").  Thus, the undersigned recommends that this argument be rejected as well.

---

[5] Before the BRB, Petitioners abandoned the argument that the doctrine only applies where "the conditions of overseas employment are those which present unique or special dangers to the employees because of their far flung [sic] locale of employment, or special risks presented by overseas employment not presented here."  (Doc. 14 at 11 n.10.)  As noted by the BRB, a similar argument was rejected in *DiCecca*.  (*Id.*)

Petitioners also argue that applying the doctrine to a routine daily act such as showering would create unlimited liability under the DBA.  (Doc. 19 at 17–18.)  In rejecting a similar argument, the First Circuit stated: "[N]ot all 'ubiquitous' activities entail employer liability. . . . The question, then, is which 'ubiquitous' activities are covered [under the doctrine].  And the answer is a case-specific determination of foreseeable, reasonable incidence to the foreign employment, left largely for the Board."  *See DiCecca*, 792 F.3d at 223 n.2.  Thus, the undersigned recommends that this argument be rejected.

Petitioners rely primarily on a BRB decision, *R.F. v. CSA, Ltd.*, 2009 WL 3159147 (Sept. 30, 2009), for the proposition that injuries occurring as a result of entirely personal actions, such as using a chemical peel to improve one's skin, are not foreseeable and thus not compensable.  In *R.F.*, the BRB found that the "claimant's use of the chemical peel in this case was personal in nature and did not have its genesis in his employment, making the zone of special danger doctrine inapplicable" because it was "undisputed that claimant has a long history of undergoing cosmetic skin treatments, and he has been diagnosed as being obsessed with his skin."  *Id.* at *5.  The undersigned recommends that the facts and circumstances in the instant case are entirely distinguishable from those in *R.F.*  Thus, the undersigned recommends that Petitioners' arguments based on *R.F.* be rejected.

14

## V.     Conclusion

As explained above, the undersigned recommends that the BRB's decision be affirmed because the ALJ's determination that Claimant's injuries are compensable under the zone of special danger doctrine is in accordance with applicable law and supported by substantial evidence.

Accordingly, it is respectfully **RECOMMENDED** that:

1.     The BRB's decision be **AFFIRMED**.

2.     The Clerk of Court be **DIRECTED** to enter judgment accordingly and close the file.

**DONE AND ENTERED** at Jacksonville, Florida, on December 16, 2016.

JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

The Honorable Timothy J. Corrigan
United States District Judge

Counsel of Record

15